## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Stephen Michael Van De Berg,
c/o 3947 W. Lincoln Hwy, #333
Downingtown, Pennsylvania
PH: 484.885.0604

STEPHEN M VAN DE BERG,
c/o 3947 W. Lincoln Hwy, #333
Downingtown, Pennsylvania 19335
PH: 484.885.0604
Plaintiffs

v.

Social Security Administration,
Windsor Park Building
6401 Security Blvd.
Baltimore, MD 21235,

United States Government,
950 Pennsylvania Avenue, NW
Washington, DC 20530,
Defendants

CIVIL ACTION NO._____

**FILED**

MAY - 1 2008

Clerk, U.S. District and
Bankruptcy Courts

Case: 1:08-cv-00765
Assigned To : Friedman, Paul L.
Assign. Date : 5/1/2008
Description: FOIA/Privacy Act

---

### COMPLAINT

### I   Introduction and Opening Statement

Plaintiffs bring this action against Defendants for fraud in the inducement; more particularly

against Defendants' inducement to participate with the formation and operation of a trust; when

in fact, Defendants' subsequent actions demonstrate Defendants had undisclosed ulterior motives

for so inducing Plaintiffs and only after said trust has operated for years did Defendants allege

they did not create such a trust (Plaintiff 2); rather, Defendants have now ruled the relationship

so induced numbered Plaintiff 1; however, if Defendants had disclosed such a plan on the onset

of the relationship offered, Plaintiff 1 would not have accepted such an offer because such

acceptance violates God's law and Plaintiff 1's covenants to obey the same; further, such a

relationship exceeds Defendants authority and violates Plaintiffs' rights, privileges and

immunities, whether they be God given inherent and constitutionally secured or otherwise

assigned; in support of which we present the following:

# Table of Contents

*I*    *Introduction and Opening Statement* _____ *1*

*II*   *Jurisdiction* _____ *5*

*III*  *Parties* _____ *5*

*IV*   *Material Facts* _____ *6*

*V*    *Argument* _____ *13*
  1.  Plaintiff 1's Covenant with God is controlling. _____ 13
  2.  Defendants' spuriously market the Social Security program with false publications and advertisements in order to induce participation in said program. _____ 16
  3.  Plaintiff 1 considers and agrees to accept Defendants' spuriously marketed offer. _____ 18
  4.  A study of historical events and the law shows: _____ 22
  5.  Defendants reveal their true intentions by alleging they actually numbered Plaintiff 1 instead of creating and numbering Plaintiff 2 as Defendants had previously disclosed. _____ 22
  6.  Plaintiffs were injured. _____ 23

*VI*   *Causes of Action* _____ *24*
  1.  Defendant 1 induced Plaintiff 1 to enter into an agreement, which agreement continued successfully for many years until recently when, contrary to said agreement, Defendant 2 argued that instead of creating and numbering Plaintiff 2, Defendant 1 numbered Plaintiff 1, which argument proves fraud in said inducement; which fraudulent inducement violated the law and voids said agreement from its beginning. _____ 24
  2.  Defendant 2 argues that instead of creating and numbering Plaintiff 2, Defendant 1 numbered Plaintiff 1, which numbering was done without disclosure, and, therefore, without consent; and, accordingly Defendant 1 exceeded their statutory authority in so numbering Plaintiff 1, which abuse of power renders said agreement void from its beginning. _____ 36
  3.  Defendant 2 argues that instead of creating and numbering Plaintiff 2, Defendant 1 numbered Plaintiff 1, which numbering was done without disclosure, and, therefore, without consent; and, accordingly violates Plaintiff 1's constitutionally secured right of freedom of religion, which violation renders said agreement void from its beginning. _____ 38
  4.  Defendant 2 argues that instead of creating and numbering Plaintiff 2, Defendant 1 numbered Plaintiff 1, which numbering was done without disclosure, and, therefore, without consent; and, accordingly violates Plaintiff 1's constitutionally secured right of Liberty, which violation renders said agreement void from its beginning. _____ 40
  5.  Defendant 2 argues that instead of creating and numbering Plaintiff 2, Defendant 1 numbered Plaintiff 1, which numbering was done without disclosure, and, therefore, without consent; and, accordingly violates Plaintiff 1's constitutionally secured right of privacy, which violation renders said agreement void from its beginning. _____ 42
  6.  Defendant 2, Plaintiff 2's Beneficiary, denied Plaintiff 2's existence and attacked Plaintiff 2's Trustee. _____ 43

*VII*  *Request for Relief* _____ *44*

*VIII* *Closing Statement* _____ *45*

**Table of Authorities**

**CASES**

Flemming v. Nestor, 363 U.S. 603 (1960) ................................................. 11, 17, 22, 26, 27

Helvering v. Davis, U.S. 619, 635 (1937) ..................................................... 11, 22, 26, 27

Marbury v. Madison, 5 US (2 Cranch) 137, 174, 176, (1803) ................................. 39, 41

Miranda v. Arizona, 384 US 436 ........................................................................ 39, 41

Norton v. Shelby County, 118 US 425 ............................................................... 39, 41

Pulte v. Osmose Wood Preserving, 60 F.3d 734, 742 (11th Cir. 1995) ........................ 24

Railroad Retirement Board v. Alton Railroad, 295 U.S. 330 .................................... 26

STEPHEN M VAN DE BERG (a trust) v. Commissioner of Revenue, T.C. No. 17072-04 ........ 12

Yick Wo v. Hopkins, 118 U.S. 356 (1886) ............................................................ 40

**CONSTITUTION AND DECLARATION OF INDEPENDENCE**

Amendment I ................................................................................................. 5, 39

Amendment IX .................................................................................................. 36

Amendment X ................................................................................................... 36

Amendment XIII ............................................................................................. 5, 35

Article III, § 2 ....................................................................................................... 5

Declaration of Independence ........................................................................... 16, 38

**HOLY BIBLE**

1 John 2:15-17 ..................................................................................................... 14

2 Samuel 24:10 ......................................................................................... 14, 34, 37

2 Samuel 24:1-16 ................................................................................................ 15

2 Samuel 24:15-16 .............................................................................................. 15

Daniel 7:14, 27 .................................................................................................... 14

Exodus 19:6 ......................................................................................................... 14

Genesis 1:26-28 ..................................................................................................... 5

Genesis 1:27-28 ................................................................................................... 14

Genesis 13:16 .................................................................................................. 14, 37

Isaiah 2:2-4 .......................................................................................................... 14

Isaiah 9:6-7 .......................................................................................................... 14

John 15:19 ............................................................................................................ 14

John 17:16,18 ....................................................................................................... 14

Mathew 6:33 ........................................................................................................ 14

Revelation 13:17 .................................................................................................. 15

Revelation 14:9-11 .............................................................................................. 15

**STATUTES**

28 U.S.C. §§ 1331 .................................................................................................. 5

28 USC 1391(e) ...................................................................................................... 5

5 USC § 552a(g)(1)(C) ............................................................................................ 5

5 USC § 552a(g)(1)(D) ........................................................................................... 5

5 USC § 702 ........................................................................................................... 5

5 USC 552a ................................................................................................... 12, 22

5 USC 552a(d) ....................................................................................................... 5

5 USC 706(2)(A) .................................................................................................... 5

5 USC 706(2)(B) .................................................................................................... 5

5 USC 706(2)(C)...........................................................................................................5
5 USC 706(2)(D) ..........................................................................................................5
Administrative Procedures Act.........................................................................5, 12, 16
Deadbeat-Dad statutes..........................................................................11, 42, 43
Federal Insurance Contributions Act......................................................................17
Homeland Security Act ............................................................................11, 42, 43
P.A.T.R.I.O.T. Act ..................................................................................11, 42
Public Law 97-280 ..............................................................................5, 15, 21, 37
Social Security Act of 1935 (P.L. 74-271)........................6, 10, 16, 17, 19, 21, 29
The Privacy Act of 1974: P.L. 93-579...................................5, 9, 18, 19, 29, 30, 42, 43

**REGULATIONS**
20 CFR 422.103(d) ..............................................................................................10, 20
26 CFR 31.6109-1........................................................................................7, 18
26 CFR 6723...........................................................................................................7

**TREATISES**
3rd Restatement of the Law on Trusts, Vol 3............................................................20

**CATECHISM OF THE CATHOLIC CHURCH**
Paragraph 2404 .......................................................................................................14
Paragraph 373 .........................................................................................................14
Paragraph 952 .........................................................................................................14

**OTHER AUTHORITIES**
A Brief Explanation of the Social Security Act.........................................................9
A Brief Outline of Employer's Duties Under the Social Security Act ........7, 8, 18, 25, 33
A National Identification System ..............................................................................30
Account statements from Defendant 1 ................................................................13, 27
ADMINISTRATION OF THE FEDERAL SYSTEM OF OLD-AGE BENEFITS.....7, 11, 22, 28
FEDERAL OLD-AGE AND SURVIVORS INSURANCE Your SOCIAL SECURITY.....17, 19, 20, 25
Old-Age Insurance "SAFE as the U.S.A."....................................................8, 25
Records, Computers and the Rights of Citizens, Report of the Secretary's Advisory Committee on Automated Personal Data Systems, U.S. Department of Health, Education and Welfare, Washington: U.S. Government Printing Office, 1973, p. 121........................9, 18, 29
Response from SSA in a letter to Mr. Scott McDonald.........................................11, 22
S. 3418 (Public Law 93-579) 181 (Joint Comm. Print 1976) ......................................9
S. Rep.No. 93-1183 at 28 ..........................................................................................9
Social Security Act – Federal Old-Age Benefits Program, A Brief Statement to Employers on Tax Returns – Informational Returns – Records – Account Numbers ......................7
SSA Publication No. 05-10002.........................................................13, 18, 25, 27
To Employees of Industrial and Business Establishments, FACTORIES –SHOPS-MINES-MILLS-STORES-OFFICES AND OTHER PLACES OF BUSINESS ...........................8, 17
WHAT THE SOCIAL SECURITY ACT MEANS TO BAKERIES AND THEIR EMPLOYEES ....................................................................................................8
WHAT THE SOCIAL SECURITY ACT MEANS TO BARBER SHOPS AND BEAUTY PARLORS ................................................................................................8
WHAT THE SOCIAL SECURITY ACT MEANS TO THE AUTOMOBILE INDUSTRY ........8

## II  Jurisdiction

1.　In accord with: 5 USC § 702, 5 USC § 552a(g)(1)(C), 5 USC § 552a(g)(1)(D), 5 USC 706(2)(A), 5 USC 706(2)(B) and 5 USC 706(2)(C), 5 USC 706(2)(D), 5 USC 552a(d) and The Privacy Act of 1974: P.L. 93-579 (hereinafter "Privacy Act") Plaintiffs invoke this court's jurisdiction.

2.　Subject Matter Jurisdiction: Plaintiffs further invoke this courts jurisdiction over the subject matter of this case in accord with Article III, § 2 and Amendment I of the Constitution of the United States of America, 28 U.S.C. §§ 1331 and Amendment XIII to the United States Constitution.

3.　Venue: 28 USC 1391(e).  At all times relevant, the causes of action were committed within the geographical purview of this court.

## III  Parties

**Plaintiff 1:**  Stephen Michael Van De Berg

1.　Stephen Michael Van De Berg, is a free inhabitant on the soil by blood, birth and decent and as such is a beneficiary of the Constitution for the United States of America in its original jurisdiction, all of which nature sets Plaintiff 1's capacity;

2.　Plaintiff 1 is a man, who was naturally born in Illinois (the State);

3.　Plaintiff 1's capacity is that of a sovereign Catholic Steward—a servant of the King of Kings bound by Covenant[i] defined in Torah (Public Law 97-280).

4.　Said Covenant with God is controlling over all agreements and activities of said Steward.  (see footnote "i" below)

**Plaintiff 2:**  STEPHEN M VAN DE BERG (SSN: XXX-XX-6277)

1.　Plaintiff 2 is a trust.

---

[i] This Covenant, based upon the Law of Consecration (Genesis 1:26-28 et seq.), is formally referenced in the Instrument of Acknowledgement (available for review by the Steward by appointment only) and is controlling over all relationships with the man or with the Steward, which control was acknowledged and accepted by Defendants amending their records in accord with the Administrative Procedures Act.

    a.    Plaintiff 2's Creator is Defendant 1;

    b.    Plaintiff 2 borrows Plaintiff 1's consciousness and physical capacity to fill its Trustee office;

    c.    Plaintiff 2's Beneficiary is Defendant 2;

    d.    The initial thing held in trust by Plaintiff 2 was and elementally continues to be the Social Security card (hereinafter "SSC").

    e.    Defendant 1 exhibited its intent to create Plaintiff 2 (said trust) by submitting said SSC to Plaintiff 1, after first reserving ownership of the same to Defendants yet asking Plaintiff 2 to hold said SSC in Trust until such time as Defendants want said SSC returned;

2.    Accordingly, Plaintiff 2: holds assets, buys, sells, invests, trades, contracts (including but not limited to employment contracts), etc.

**Defendant 1:** The Social Security Administration

1.    Defendant 1 was created by, and as an agent of, Defendant 2; through the operation of the Social Security Act of 1935 (P.L. 74-271), et seq. (hereinafter "SSAct");

2.    Purpose:

"…to establish a Social Security Board; to raise revenue; and for other purposes."

**Defendant 2:** The United States Government — the body corporate.

### IV Material Facts

3.    In accord with SSAct, at significant cost, Defendants created millions of SSCs.

4.    Immediately after the act was passed, Defendant 1 began to market the Social Security program to induce participation;

5.    Defendant 1's publications presented said program to employers as if it was mandatory:

    a.    *"…Therefore, **employers should make certain that <u>all</u> their employees have account numbers.** If an employer cannot learn directly from former employees the account*

*numbers assigned to them, he should proceed as follows:*

*1) Secure Form SS-5 from nearest Post Office or Field Office of the Social Security Board;*

*2) Answer the questions on Form SS-5 to the best of his knowledge, and state the reason for filing, such as "Employee left my service on _____.*

*3) Sign with his signature followed by the word "Employer";*

*4) Send each application card to this office. Account numbers will be issued immediately and the employer will receive notice of the number thus assigned so that he may complete his informational return."* [emphasis added] (Quoted from a 1935 SSA brochure titled, "Social Security Act – Federal Old-Age Benefits Program, A Brief Statement to Employers on Tax Returns – Informational Returns – Records – Account Numbers".)

b.    *"Most employers and employees are covered by these provisions, of the act. This is not a matter of choice. Employers and employees covered by the law are legally required to comply with it... Your Employees' Social Security Account Numbers. Numbers are used by the Social Security Board to identify the accounts of your employees who are covered by the Federal old-age insurance program. An account is kept for each employee by the Social Security Board. The number given to each of your employees is the number of his social security account. See that each of your employees has a social security account number. If any employee does not have a number, have him make application on Form SS-5. If an employee fails to file an application for an account number, you are required to file one for him at your nearest Social Security Board office"* [emphasis added] (Quoted from, A Brief Outline of Employer's Duties Under the Social Security Act (hereinafter, "Outline of ER Duties"), *issued jointly by the Social Security Board and the Bureau of Internal Revenue Washington, D. C.*

c.    The law requires employers to request an SSN from anyone seeking a job (26 CFR 31.6109-1)

d.    The law provides penalties for employers who fail to collect an SSN:

*"In the case of a failure by any person to comply with a specified information reporting requirement on or before the time prescribed therefor, such person shall pay a penalty of $50 for each such failure, but the total amount imposed on such person for all such failures during any calendar year shall not exceed $100,000." 26 CFR 6723*

6.    Employers, based on Defendants marketing and implied threat of police power, told job applicants the program was mandatory;

7.    Defendants presented the Social Security program as an insurance/retirement program similar to an annuity offered by a private insurance company which was funded with a "old-age reserve account" or general trust fund:

a.    *"The benefits will be paid to qualified individuals, just as they are paid under an insurance policy by a private insurance company. An individual is entitled to benefits*

*regardless of the size of the organization for which he has worked, for the old-Age benefits provisions apply to employers of one or more persons in industries falling within the scope of the system as defined in the act. The benefits will be based upon the wages received by each individual during his working years in covered employments.* " [emphasis added] ADMINISTRATION OF THE FEDERAL SYSTEM OF OLD-AGE BENEFITS, *by FRANK BANE, Executive Director of the Social Security Board, Delivered at Mid-Year Conference of the National Retail Dry Goods Association, Chicago, June 9, 1936, Director Bane*

    b.    *"This act is primarily designed to provide the average worker with something to live on when he is unemployed, and when he is too old to work. For this purpose **it provides for an unemployment insurance program and sets up an old-age insurance system**."* [emphasis added] (from, Outline of ER Duties)

    c.    *"More than 40,000,000 American wage earners have applied for account under the Federal old-age insurance plan established by the Social Security Act... **The Federal old-age insurance plan is sound**...",* [emphasis added] (from the pamphlet, Old-Age Insurance "SAFE as the U.S.A.", by The Social Security Board, 1938)

    d.    Regarding the pamphlet last referenced:

        1)    It explicitly compares the Social Security program to private insurance companies who issue annuities and states, *"Those insured under this system will get their money when it is due"*; and,

        2)    It says the money is *"deposited in a special 'Old Age Reserve Account'* and explicitly describes the interest mechanism;

    e.    Touting the benefits of said program to workers of all kinds, Defendant 1 released several papers including but not limited to, "WHAT THE SOCIAL SECURITY ACT MEANS TO BAKERIES AND THEIR EMPLOYEES", "WHAT THE SOCIAL SECURITY ACT MEANS TO BARBER SHOPS AND BEAUTY PARLORS", "WHAT THE SOCIAL SECURITY ACT MEANS TO THE AUTOMOBILE INDUSTRY", "To Employees of Industrial and Business Establishments, FACTORIES – SHOPS-MINES-MILLS-STORES-OFFICES AND OTHER PLACES OF BUSINESS", which disclosed:

    *1)    "You will be earning benefits that will come to you later on. From the time you are 65 years old, or more, and stop working, you will get a Government check every month of your life..."*
    *2)    "**The checks will come to you as a right**. You will get them regardless of the amount of property or income you may have..."*

3)    *"The law also creates an "Old-Age Reserve Account"* in the United States Treasury, Congress is authorized to put into this reserve account each year enough money to provide for the monthly payments you and other workers are to receive when you are 65..."

4)    "Meanwhile, the Old-Age Reserve fund in the United States Treasury is drawing interest, and the Government guarantees it will never earn less than 3 percent. This means that 3 cents will be added to every dollar in the fund each year."

f.    "...Old-Age Benefits (Annuity plan) – **Under this plan regular benefits are paid to qualified individuals as a matter of right out of an "old-age reserve account" set up in the Federal Treasury**" [emphasis added]  A Brief Explanation of the Social Security Act, September 1936

8.    Defendants promised the people that the number would not number them and would

never be forced for identification:

a.    For years, all SSCs stated, "Not for Identification"

b.    The Privacy Act was passed to reassure the people that the SSN was not intended to

number them:

1)    The committee who's action spurred the Privacy Act stated:

*"We recommend against the adoption of any nationwide, standard, personal indentification format, with or without the SSN, that would enhance the likelihood of arbitrary or uncontrolled linkage of records about people, particularly between government or government-supported automated personal data systems."* Records, Computers and the Rights of Citizens, Report of the Secretary's Advisory Committee on Automated Personal Data Systems, U.S. Department of Health, Education and Welfare, Washington: U.S. Government Printing Office, 1973, p. 121

2)    According to the Senate Committee on Government Operations, the

motivation for passing The Privacy Act  was to ensure the SSN was not used as a

universal identifier; S. Rep.No. 93-1183 at 28, reprinted in Staffs of Senate Comm. On

Government Operations and the House Comm. On Government Operations, 94th Cong., Legislative

History of the Privacy Act – S. 3418 (Public Law 93-579) 181 (Joint Comm. Print 1976)

3)    The purpose of the Privacy Act was to *"provide certain safeguards for an*

*individual against an invasion of personal privacy..."*

4)    In the Privacy Act, Congress stated:

    a)   *"The right to privacy is a personal and fundamental right protected by the Constitution of the United States"*;

    b)   *"It shall be unlawful for any Federal, State or local government agency to deny to any individual any right, benefit, or privilege provided by law because of such individual's refusal to disclose his social security account number."*

9.   In accord with said SSAct, upon receipt of an SS-5 form submitted to Defendant 1, Defendant 1 created a name and an account number and registered the same with the data from said SS-5 form into a database record identified by said name and number.

10.  Respectively, Defendant 1 printed said registered name and number on a SSC; and,

11.  Defendant 1 mailed said SSC to Plaintiff 1 reserving ownership of the same to Defendants.

12.  Having so reserved ownership, Defendant 1 asked Plaintiff 1 to hold said SSC (in trust) until such time as Defendants wanted said SSC returned to them.

13.  The documents with said SSC disclosed:

*"This card is invalid if not signed by the number holder ... Improper use of this card and/or number by the number holder or any other person is punishable by fines, imprisonment or both. This card is the property of the Social Security Administration and must be returned upon request."* (Also see 20 CFR 422.103(d).)

14.  Upon reaching the age of maturity, as a Catholic Steward, Plaintiff 1 agreed to accept Defendant 1's offer to create a trust (Plaintiff 2); and,

    a.   accordingly Plaintiff 1 loaned his consciousness and physical capacity to Plaintiff 2 through Plaintiff 2's Trustee capacity;

    b.   giving Plaintiff 2 the physical capacity to so hold said SSC in trust as per SSA's request;

15.  Plaintiff 2 then activated said SSC with its signature act (signed the SSC).

16.  From its inception Plaintiff 2 operated in peace in accord with its creation;

17.  A chain of significant historical events caused Plaintiffs to study more thoroughly what

Defendants were doing in relationship to trusts like Plaintiff 2 and people like Plaintiff 1:

    a.    In 2000, Plaintiffs were disturbed by media reports alleging Defendants would not be able to meet their Social Security obligations when the "baby boomers" retire;

    b.    States began implementing so called "Deadbeat-Dad statutes" to imply a requirement for a Social Security number (hereinafter "SSN") on application for various licenses; which thing Congress promised would never happen with the SSN, when they proposed the Social Security system.

    c.    Banks began alleging the P.A.T.R.I.O.T. Act required them to require a SSN to open a bank account for an individual, when no such requirement can be found in said Act;

    d.    The proposed Homeland Security Act implied a change in the way the Defendants would deal with people and their relationships with the Plaintiffs.

18.   The nature of the Social Security program includes:

    a.    The Social Security program is not mandatory:

        1)   *"This registration and assignment of numbers is voluntary;"* ADMINISTRATION OF THE FEDERAL SYSTEM OF OLD-AGE BENEFITS, *by FRANK BANE, Executive Director of the Social Security Board, Delivered at Mid-Year Conference of the National Retail Dry Goods Association, Chicago, June 9, 1936, Director Bane*

        2)   *"The Social Security Act does not require a person to have a Social Security Number (SSN) to live and work in the United States, nor does it require an SSN simply for the purpose of having one."* Response from SSA in a letter to Mr. Scott McDonald dated March 18, 1998 from Charles Mullen, Associate Commissioner, Office of Public Inquiries, Social Security Administration

    b.    The Social Security program is not an insurance/retirement program similar to a private annuity.  (see: Flemming v. Nestor, 363 U.S. 603 (1960))

    c.    There is no trust fund to fund the Social Security program:

*"The proceeds of both (the employee and the employer) taxes are to be paid into the treasury like other internal revenue generally, and are NOT earmarked in any way."*  Helvering v. Davis, U.S. 619, 635 (1937)

19.  In accord with, 5 USC 552a, Plaintiff 2 requested an amendment to the Defendants' records, to lawfully secure the nature of the relationship Defendants created with Plaintiffs by drafting a <u>Simple Social Security Trust</u> indenture, which definitively described Plaintiff 2 and its explicit creation by Defendant 1.

20.  Said Indenture was served upon Defendant 1 by 1st class mail with an attached cover letter.

21.  In accord with 5 USC 552a, said cover letter formally requested that Defendant 1 review said cover letter and Indenture, their premise for amendment into Defendant 1's permanent records for Plaintiff 2 and their accuracy in relating the exact nature of the relationship between Plaintiffs and Defendants and to then accordingly either show cause why the same should not be amended into said permanent records or so amend the same.

22.  Defendant 1 accordingly amended their records without contest;

23.  Again, in accord with the Administrative Procedures Act, Plaintiff 2 crafted and filed with Defendant 1 another similar request (more clearly defining the same) for a follow-up amendment to Defendant 1's permanent records;

24.  Defendant 1 again amended its records without contest;

25.  Some time later, in an unrelated tax court case (STEPHEN M VAN DE BERG (a trust) v. Commissioner of Revenue, T.C. No. 17072-04) Defendant 2 alleged:

   a.    Defendant 1 did not create Plaintiff 2; and,

   b.    Plaintiff 1 was the numbered taxpayer.

26.  Based on Defendant 2's last said allegation, the Tax Court ordered Plaintiff 2 to attest it was Plaintiff 1 or the Tax Court would dismiss the case.

27.  Whereas Plaintiff 2 is not Plaintiff 1, it was impossible for Plaintiff 2 to comply with

said Tax Court Order;

28.  The Tax Court then dismissed the case alleging it was brought by an incorrect party; as if Plaintiff 1 was the numbered taxpayer instead of Plaintiff 2.

29.  In spite of the fact that the trial court's rules specifically allow trusts to proceed without an attorney's representation, the Circuit Court of Appeals denied access to the appellate court alleging Plaintiff 2 could not access the courts without an attorney.

30.  The United States Supreme Court denied a respective Cert. and subsequent petition for rehearing that were filed with them to appeal said lower court rulings.

31.  Defendant 2 now alleges Plaintiff 1 is the taxpayer; and, alleges all respective tax returns must be signed by Plaintiff 1 rather than by Plaintiff 2 (the actual taxpayer).

32.  Defendant 1 now claims: *"A Social Security number is important because you need it to get a job"* Your Social Security Number And Card, SSA Publication No. 05-10002, October 2006

33.  In the Account statements from Defendant 1 for both 2006 and 2007 to Plaintiff 2, dated November 16, 2006 and November 23, 2007 respectively, Defendant 1 expressed its concern about Defendant 1's future:

*"... But, now, the Social Security system is facing serious future financial problems, and action is needed soon to make sure that the system is sound when today's younger workers are ready for retirement. ....Without changes, by 2040 the Social Security Trust Fund will be exhausted..."*

## V  Argument

**1.  Plaintiff 1's Covenant with God is controlling.**

    a.  As stated in the Parties section, Plaintiff 1 is a sovereign Catholic Steward—a servant of the King of Kings bound by prior Covenant with God, which Covenant is controlling over all agreements and activities of Plaintiff 1.

    a.  Said Covenant requires Plaintiff 1 to:

        1)  *"...Be fruitful, and multiply, and replenish the earth, and subdue it: and have*

*dominion over...the earth.*" (Genesis 1:27-28) [God gave man dominion, agency and possession (sovereign stewardship) over the earth, which is God's creation and property. God did not give man ownership of the property; rather He gave man stewardship. If man takes personal ownership of the things of this world that makes him of the world (contrary to said Covenant).]

2)    Be in the world and not of it. This could also read: 'Be in the system, but not of it.' (1 John 2:15-17; John 15:19; John 17:16,18)

3)    Build up the Kingdom of God on this Earth (Exodus 19:6; Daniel 7:14, 27; Isaiah 2:2-4; Isaiah 9:6-7; Mathew 6:33).

4)    As God's Steward, all of Plaintiff 1's time, talent, effort, energy, everything he has ever had or will ever have are required for the building up of the Kingdom of God on this earth, which the Catechism of the Catholic Church explains as follows:

a)    "*In God's plan man and woman have the vocation of "subduing" the earth as stewards of God. This sovereignty is not to be an arbitrary and destructive domination...*" (Paragraph 373)

b)    "*...A Christian is a steward of the Lord's goods.*" (Paragraph 952)

c)    "*...The ownership of any property makes its holder a steward of Providence, with the task of making it fruitful and communicating its benefits to others, first of all his family.*" (Paragraph 2404)

b.    Plaintiff 1 cherishes the Holy Bible as God's Word;

1)    The Bible is very clear that God's people are not to be numbered (Genesis 13:16, 2 Samuel 24:10);

2)    Said Covenant requires Plaintiff 1 to obey God's Word;

3)    Therefore, accepting a number, or being so numbered, is prohibited by said Covenant;

4)    The reason for the prohibition is simple: our Heavenly Father made us and makes rules for us for our own good;

5)    He knows that only evil tyrants desire to number (or mark) His children in order to enslave them; wherefore, He commands His children not to be numbered;

6)    When David turned away from God's command and numbered the people for a tax and to support war, they were punished for violating this command (2 Samuel 24:1-16):

*"So the LORD sent a pestilence upon Israel from the morning even to the time appointed: and there died of the people from Dan even to Beer-sheba seventy thousand men. And when the angel stretched out his hand upon Jerusalem to destroy it, the LORD repented him of the evil, and said to the angel that destroyed the people, It is enough: stay now thine hand." (2 Samuel 24:15-16);*

7)    This destruction stands as a warning against so numbering the people, both to those that number and to those that take such numbers;

8)    John's Revelation warns us of a time when such wickedness may be repeated:

*"He (the beast) also forced everyone, small and great, rich and poor, free and slave, to receive a mark on his right hand or on his forehead, so that no one could buy or sell unless he had the mark, which is the name of the beast or the number of his name." Revelation 13:17 (parenthetical comment added for clarity)*

9)    John also warns God's children of the consequences of accepting the number:

*"If any one... receives a mark on his forehead or on his hand, he also shall drink the wine of God's wrath poured unmixed into the cup of his anger, and he shall be tormented with fire and brimstone in the presence of the holy angels and in the presence of the Lamb. And the smoke of their torment goes up for ever and ever; and they have no rest, day or night,... whoever receives the mark of his name." Revelation 14:9-11*

c.    In 1982, Public Law 97-280 was unanimously passed by the United States Congress and was enacted into Law with the signature of the President of the United States of America; it acknowledges the Bible as foundational law and states in part:

*"Whereas the Bible, the Word of God...led to the early settlement of our Nation ...inspired concepts of civil government that are contained in our Declaration of Independence and the constitution of the United States...",* And it acknowledged an ongoing voluntary, *"national need to study and apply the teachings of the Holy Scriptures."*

d.    Accordingly, as specified in the *Administrative Procedures Act*, Plaintiff 1 notified Defendants of said covenants control over Plaintiff 1's relationship with Defendants and without contest requested an amendment be recorded in Defendant 1's records for the taxpayer (Plaintiff 2).

e.    Wherefore, Defendants knew or should have known that Gods law and Plaintiff 1's said Covenants with God are controlling even in Law over the relationship between the Plaintiffs and over the relationship offered by Defendants as accepted by the Plaintiffs.

**2.    Defendants' spuriously market the Social Security program with false publications and advertisements in order to induce participation in said program.**

a.    Defendant 2 went bankrupt in 1933 and needed a means whereby it could generate assets with which it could begin to pay its debts to the Federal Reserve Bank; thus, allowing Defendant 2 to continue functioning under the bankruptcy by borrowing (renting) Federal Reserve Notes (transaction chits).

b.    The first paragraph of SSAct, states its main purposes were, "to establish a Social Security Board; to raise revenue; and for other purposes"; which revenue generating system could satisfy the needed means referenced in our last paragraph;

c.    From the time SSAct was passed, Defendants marketed the Social Security program heavily to induce participation.  Said marketing employed the carrot and stick method to induce participation;

d.    Defendants extolled the benefits of "Social Security" spuriously claiming it was a "retirement"/"insurance" program funded through a "Social Security trust fund" when no

such "retirement program", "insurance program" or "trust fund" existed.

   1)   For example, Defendants stated:
         a)   *"You will be earning benefits that will come to you later on. From the time you are 65 years old, or more, and stop working, you will get a Government check every month of your life…"*
         b)   *"The checks will come to you as a right. You will get them regardless of the amount of property or income you may have…"*
         c)   *"The law also creates an "Old-Age Reserve Account" in the United States Treasury, Congress is authorized to put into this reserve account each year enough money to provide for the monthly payments you and other workers are to receive when you are 65…"*
         d)   *"Meanwhile, the Old-Age Reserve fund in the United States Treasury is drawing interest, and the Government guarantees it will never earn less than 3 percent. This means that 3 cents will be added to every dollar in the fund each year."* (To Employees of Industrial and Business Establishments, FACTORIES –SHOPS-MINES-MILLS-STORES-OFFICES AND OTHER PLACES OF BUSINESS)

   2)   Defendants named the act that regulates distributions mandated under SSAct the Federal Insurance Contributions Act (hereinafter "FICA") even though no such Insurance program existed;

   3)   Under the "U.S. Department of Health Education, and Welfare, Defendants set up a SSA "Bureau of Old-Age and Survivors Insurance" in Washington, D.C.

   4)   Then Defendants published materials like the booklet titled, FEDERAL OLD-AGE AND SURVIVORS INSURANCE *Your* SOCIAL SECURITY, publication numbered 209202 and catalogued as, "May 1953, OASI-35" (hereinafter "OASI-35"); which booklet was then marked and sold by the Superintendent of Documents, U.S. Government Printing Office, at a "Price 10 cents".

   5)   Throughout OASI-35 Defendants make enticing marketing statements like, *"Insurance for you and your family"*, and *"The payments…are figured from the amount of your old-age insurance benefit"*, knowing there was no such insurance plan. (see: Flemming v. Nestor, *supra.*)

   e.   Defendants required employers to require the SSN from employees leaving the

impression that a SSN is mandatory to work.

    1)   *"Most employers and employees are covered by these provisions, of the act.* ***This is not a matter of choice.*** *Employers and employees covered by the law are legally required to comply with it ... If any employee does not have a number, have him make application on Form SS-5.* ***If an employee fails to file an application for an account number, you are required to file one for him at your nearest Social Security Board office"*** [emphasis added] Outline of ER Duties

    2)   Defendants passed a law requiring employers to ask for the SSN when hiring

for jobs (26 CFR 31.6109-1);

    3)   *"A Social Security number is important because you need it to get a job."* Your Social Security Number And Card" SSA Publication No. 05-10002, October 2006

    f.   Respectively, Employers told job applicants they needed a SSN to get a job;

    g.   Because of widespread fears of the possibility of the SSN becoming a national

identifier, Defendants stated:

*"We recommend against the adoption of any nationwide, standard, personal indentification format, with or without the SSN, that would enhance the likelihood of arbitrary or uncontrolled linkage of records about people, particularly between government or government-supported automated personal data systems."* Records, Computers and the Rights of Citizens, Report of the Secretary's Advisory Committee on Automated Personal Data Systems, U.S. Department of Health, Education and Welfare, Washington: U.S. Government Printing Office, 1973, p. 121

    h.   Defendants made said Committee's recommendation law and promised the people

a SSN would not number them and would not be mandatory:

*"It shall be unlawful for any Federal, State or local government agency to deny to any individual any right, benefit, or privilege provided by law because of such individual's refusal to disclose his social security account number."* (Privacy Act)

**3.   Plaintiff 1 considers and agrees to accept Defendants' spuriously marketed offer.**

    a.   Because of said marketing, agents completed an SS-5 form referring Plaintiff 1.

    b.   When Plaintiff 1 sought a job, potential employers said a SSN was mandatory to

get a job;

    c.   The necessity for Plaintiff 1 to fulfill said Covenant in the face of:

1)   Defendants' marketing their retirement/insurance program as mandatory; and

2)   Respectively, employers would not hire Plaintiff 1 without an SSN;

3)   Therefore, Plaintiff 1 considered Defendants offer; which was: Defendant 1 would entrust a SSC with Plaintiff 2, to which trust Plaintiff 1 would lend consciousness and physical capacity, for which Plaintiff 1 would be compensated by having Plaintiff 2 meet Plaintiff 1's expenses even in the face of Defendant 2's bankruptcy and failure to circulate money.

d.   When considering whether or not to accept Defendant 1's offer, Plaintiff 1 had several related concerns, including but not limited to:

1)   God's requirement that though we live in the world we are forbidden from becoming "of the world"; thus, Plaintiff 1 was concerned whether such a relationship with Defendant 1 could be used to build up God's Kingdom while Plaintiff 1 remains not of the world?

2)   And, could Plaintiff 1 operate in commerce without being numbered?

3)   And, could Plaintiff 1 use said relationship in business using transaction instruments that operate absent money while Defendant 2 remained in bankruptcy?

e.   On examination of Defendants' offer, Plaintiff 1 found:

1)   Defendants promised in the Privacy Act the SSN will never be used to number the people;

2)   SSN's were not mandated by SSAct and were adopted by Defendant 1 to uniquely identify and distinguish its agents from the people that might have the same or a similar name as such agents, which name and number combination also provided an internal recordkeeping scheme (see: OASI-35, pg. 28).

3)   Said offer fits the text book definition of a trust:

*"A trust is a fiduciary relationship with respect to property, arising from a manifestation of intention to create that relationship and subjecting the person who holds title to the property to duties to deal with it for the benefit of charity or for one or more persons, at least one of whom is not the sole trustee"* 3rd Restatement of the Law on Trusts, Vol 3., Page 17

a)   Defendants expressed their intent to create a trust as follows:

(1)   Defendant 1 sent said SSC to Plaintiff 1.

(2)   As an agent for Defendant 2, Defendant 1 reserved ownership to its master, "This card is the property of the Social Security Administration." See 20 CFR 422.103(d);

(3)   After reserving ownership Defendant 1 asked Plaintiff 1 to hold the SSC until Defendants wanted the card returned.

(4)   Defendant 1's reservation of ownership and request for due diligence to care for the SSC implied the SSC has value, "and must be returned upon request."

b)   Defendant 1 restricted Plaintiff 2's use of the card for the benefit of its beneficiary (Defendant 2) when Defendant 1's disclosure sent with the SSC said,

*"Improper use of this card and/or number by the number holder or any other person is punishable by fines, imprisonment or both. This card is the property of the Social Security Administration and must be returned upon request." See also 20 CFR 422.103(d);*

c)   Defendant 1 created Plaintiff 2's name and SSN combination to uniquely distinguish Plaintiff 2 from any other person of a similar name (see: OASI-35);

d)   The SSN would then be used by Plaintiff 2 as its taxpayer identification number (hereinafter "TIN");

(1)   Wherefore, Plaintiff 1 concluded the relationship SSA offered is a

trust (Plaintiff 2);

    4)   Defendant 1 created Plaintiff 2, which could:

        a)   Fulfill the purpose for which it was created in accord with SSAct; and,

        b)   compete in the commercial system of the day; and,

        c)   meet Plaintiff 1's life expenses, etc.; and,

        d)   provide resources to Plaintiff 1 that would allow Plaintiff 1 to continue to build the Kingdom of God without taking ownership of the things of this world;

        e)   receive continuing funding from Defendant 1, such that it could meet its needs and expenses when Plaintiff 1 was too old or incapacitated to do so;

    5)   Plaintiff 1's lending consciousness and physical capacity to Plaintiff 2 would:

        a)   not make Plaintiff 1 "of the world" in violation of said covenant with God;

        b)   allow Plaintiff 1 to build God's Kingdom without being numbered;

        c)   allow Plaintiff 1 to function in accord with said Covenant in spite of Defendant 2's bankruptcy and failure to provide money into the system;

    f.   Considering the Holy Bible is foundational law in this nation (Public Law 97-280), it is not surprising that Defendants should offer a way for Citizens of the United States of America to operate in accord with God's law, while Defendant 2 was in bankruptcy;

    g.   Accordingly, Plaintiff 1 accepted Defendants' offer and loaned Plaintiff 2 Plaintiff 1's consciousness and physical capacity so that Plaintiff 2 could: actually function, sign said SSC, be employed and operate in commerce, banking, etc.

    h.   Plaintiff 2 so operated at peace in accord with its creation for many years;

4.    **A study of historical events and the law shows:**

a.    The Social Security program is not mandatory: "*This registration and assignment of numbers is voluntary;*" <u>ADMINISTRATION OF THE FEDERAL SYSTEM OF OLD-AGE BENEFITS,</u> *by FRANK BANE*

b.    "*The Social Security Act does not require a person to have a Social Security Number (SSN) to live and work in the United States, nor does it require an SSN simply for the purpose of having one.*" <u>Response from SSA in a letter to Mr. Scott McDonald dated March 18, 1998 from Charles Mullen, Associate Commissioner, Office of Public Inquiries, Social Security Administration</u>

c.    The Social Security program is not an insurance/retirement program as advertised by Defendant 1; see Flemming v. Nestor, *supra*.;

d.    The Defendant 1 advertised Social Security trust fund does not exist; see Helvering v. Davis, *supra*.;

e.    In accord with 5 USC 552a, Plaintiff 2 generated a necessary amendment for Defendant 1's records; which amendment directly describes how Defendant 1 created Plaintiff 2; the nature of the agreement that created Plaintiff 2 and also a similar necessary follow-up amendment; which amendments, on Plaintiff 2's request, Defendant 1 accordingly amended its records without contest.

5.    **Defendants reveal their true intentions by alleging they actually numbered Plaintiff 1 instead of creating and numbering Plaintiff 2 as Defendants had previously disclosed.**

a.    Some time later, in an unrelated tax court case, Defendant 2 alleged Defendant 1 did not create Plaintiff 2, but instead numbered Plaintiff 1 thereby attempting to redefine the relationship with Plaintiffs into a relationship Plaintiff 1 would never have considered or accepted had it been revealed in Defendant's initial offer;

b.    The Tax Court dismissed the case based on Defendant 2's allegation, which alleged the case was brought by an incorrect party (Plaintiff 2); implying that Plaintiff 1 was

the numbered taxpayer instead of Plaintiff 2;

    c.    Both the Circuit Court of Appeals and the United States Supreme Court denied Plaintiff 2 access to the appellate courts alleging Plaintiff 2 could not access the courts without an attorney even though trial court rules specifically authorize such access;

    d.    Defendant 2 now states Plaintiff 1 is the numbered taxpayer; and, requires all respective tax returns must be signed by Plaintiff 1 instead of by Plaintiff 2 (the actual taxpayer).

**6.    Plaintiffs were injured.**

    a.    Plaintiff 1 was injured as follows:

    1)    Plaintiff 1 would never have agreed to be numbered if the true nature of the agreement with Defendants' was accurately disclosed because accepting a number would violate God's law and jeopardize Plaintiff 1's immortal soul, which Plaintiff 1 would never knowingly agree to; wherefore, Defendants violated Plaintiff 1's God-given inherent constitutionally secured right to free exercise of religion by numbering Plaintiff 1,

    2)    Plaintiff 1 was clearly damaged by Defendants' numbering Plaintiff 1, which numbering and the ties and binds that go with said numbering deprive Plaintiff 1 of his God-given inherent Constitutionally secured right to liberty and right to privacy, which damages would be too extensive to completely list here; however, we detail a few of the damages here:

    a)    Plaintiff 1 was clearly damaged because all of Plaintiff 1's time, talent and effort was devoted to Defendants without Plaintiff 1's agreement rather than to serving God, which is Plaintiff 1's mission in life;

b)    Plaintiff 1's constitutionally secured right to liberty was clearly violated

by Defendants; whereas, Plaintiff 1 cannot travel either by car or plane without

government issued identification which requires an SSN to acquire, wherefore

Plaintiff 1 was clearly damaged by Defendants;

c)    Plaintiff 1's constitutionally secured right to privacy was clearly

violated because every aspect of Plaintiff 1's life is available for anyone who

knows Plaintiff 2's number can inspect almost any aspect of Plaintiff 1's life;

which violation of privacy clearly damages Plaintiff 1;

b.    Plaintiff 2 was clearly damaged because Defendant 2 denies Plaintiff 2's existence

and obligations;

c.    Wherefore, for all the reasons stated above, Plaintiffs were clearly damaged by

Defendants numbering Plaintiff 1.

Wherefore, it is apparent that Defendants fraudulently induced Plaintiffs to participate in

their SSA numbering program and this court should grant Plaintiffs the remedy requested

hereafter.

## VI Causes of Action

1.    **Defendant 1 induced Plaintiff 1 to enter into an agreement, which agreement
continued successfully for many years until recently when, contrary to said agreement,
Defendant 2 argued that instead of creating and numbering Plaintiff 2, Defendant 1
numbered Plaintiff 1, which argument proves fraud in said inducement; which fraudulent
inducement violated the law and voids said agreement from its beginning.**

a.    To prevail on a claim of fraud in the inducement, the courts have ruled *(see Pulte*

*v. Osmose Wood Preserving, 60 F.3d 734, 742 (11th Cir. 1995))* Plaintiff must establish the

following elements:

1)    "A misrepresentation of a material fact";
2)    "The representor of the misrepresentation, knew or should have known of the
statement's falsity";

3)    "Intent by the representor that the representation will induce another to rely and act on it; and",

4)    "A resulting injury to the party acting in justifiable reliance on the representation."

b.    Accordingly, Plaintiffs will show the elements that establish fraud in the inducement as follows:

1)    Defendants misrepresented material facts by:

a)    Claiming (to this day) that the Social Security program:

(1)   Is mandatory:

(a)   *"Most employers and employees are covered by these provisions, of the act. **This is not a matter of choice.** Employers and employees covered by the law are legally required to comply with it ... If any employee does not have a number, have him make application on Form SS-5. **If an employee fails to file an application for an account number, you are required to file one for him at your nearest Social Security Board office"*[emphasis added] Outline of ER Duties

(b)   *"A Social Security number is important because you need it to get a job"*; Your Social Security Number And Card" SSA Publication No. 05-10002, October 2006

*(2)*   Is an insurance/retirement program similar to an annuity offered

by a private insurance company where benefits are a contractual right:

*"Federal old-age insurance plan established by the Social Security Act...Those insured under this system will get their money when it is due...Old-Age Benefits (Annuity plan) – Under this plan regular benefits are paid to qualified individuals as a matter of right out of an "old-age reserve account" set up in the Federal Treasury" [emphasis added]* "SAFE as the U.S.A.", The Social Security Board, 1938; also see: OASI-35;

(3)   Is funded by a trust fund/reserve account: *"deposited in a special*

*"Old Age Reserve Account"*, "SAFE as the U.S.A.", The Social Security Board,

1938;

b)    Defendants make said claims despite the facts:

(1)   The Social Security program is not mandatory.  There is no law

requiring anyone to participate in the Social Security program other than those that voluntarily desire to participate with the program:

(2)   The Social Security program is not an insurance or a retirement program; see: Flemming v. Nestor, *supra.*;

(3)   Social Security benefits are not a right; see: Flemming v. Nestor, *supra.*;

(4)   There is no Old-Age Reserve Account or Social Security General Trust Fund: (Helvering v. Davis, U.S, *supra.*),

c)   Defendants continue to this day to market the program in a false and deceptive manner, despite the Supreme Court rulings and the facts that participation is voluntary, which is detailed as follows:

(1)   Defendant 1 still describes Social Security as "Social Security retirement benefit" and markets the program as an insurance/retirement program similar to an annuity where benefits are guaranteed, when, in fact, the Supreme Court has ruled said Social Security program is not an insurance or retirement program and benefits are not guaranteed; see: Flemming v. Nestor, *supra.* and, Helvering v. Davis, U.S., *supra.*;

(2)   When Congress adopted the Social Security Act in 1935, the Supreme Court had already addressed the first such act of 1934 and held in Railroad Retirement Board (Railroad Retirement Board v. Alton Railroad, 295 U.S. 330 at 368) that Congress had no authority to establish a retirement scheme even through its most tremendous power, its control over interstate commerce:

*"The catalogue of means and actions which might be imposed upon an employer in any business, tending to the satisfaction and comfort of his employees, seems endless. Provision for free medical attendance and nursing, for clothing, for food, for housing, for the education of children, and a hundred other matters might with equal propriety be proposed as tending to relieve the employee of mental strain and worry. Can it fairly be said that the power of Congress to regulate interstate commerce extends to the prescription of any or all of these things? Is it not apparent that they are really and essentially related solely to the social welfare of the worker, and therefore remote from any regulation of commerce as such? We think the answer is plain. These matters obviously lie outside the orbit of congressional power."*

     (3)  Defendants call the law that regulates distributions to Plaintiff 2's

Beneficiary (Defendant 2) the "Federal Insurance Contributions Act",

when, in fact, the Supreme Court has ruled said program is not an insurance

program. (see: Flemming v. Nestor, *supra*.)

     (a)  Though the title to the act itself alone is not definitive of

Defendants' misrepresentation;

     (b)  When combined with the fact that Defendants also market the

program as an insurance program with training materials and booklets

like, OASI-35, their misrepresentation of the facts becomes clear.

     (4)  Defendant 1, in account statements to Plaintiff 2,  still says there

is a Social Security Trust Fund:

*"...Without changes, by 2040 the Social Security Trust Fund will be exhausted...",* when, in fact, the Supreme Court has ruled there is no such trust fund, see: Helvering v. Davis, *supra.*;

     (5)  Defendants now not only market the program to employers as

mandatory, but publicly allege participation in Social Security is mandatory,

*"A Social Security number is important because you need it to get a job" (Your Social Security Number And Card" SSA Publication No. 05-10002, October 2006);*

     When, in fact, from the beginning Defendants have stated,

*"This registration and assignment of numbers is voluntary;" ADMINISTRATION OF*

*THE FEDERAL SYSTEM OF OLD-AGE BENEFITS, by FRANK BANE.*

    d)   Offering a relationship that fit the textbook definition of a trust and promising said relationship was not intended to number Plaintiff 1, when, in fact, Defendant 2 has argued Plaintiff 2 does not exist and Plaintiff 1 is the taxpayer identified by the SSN; which argument is a significant change from the nature of the relationship Plaintiff 1 advertized and marketed; which argument also clearly demonstrates Plaintiffs' misrepresentation of material facts.

    2)   Defendants knew or should have known their statements marketing the Social Security program were false, which is shown as follows:

    a)   As detailed above (in Causes of Action, paragraph 1.b.1.), Defendants knew or should have known their representations were false because:

    (1)   Defendants knew their marketing that participation in the Social Security program is mandatory was (and remains) false. There is no law requiring participation with Social Security and Defendants have acknowledged that from the beginning of said program;

*"This registration and assignment of numbers is voluntary;" ADMINISTRATION OF THE FEDERAL SYSTEM OF OLD-AGE BENEFITS, by FRANK BANE.*

    (2)   The Supreme Court ruled contrary to Defendants' advertising: there is no retirement or insurance program, there is no trust fund, and benefits are not guaranteed; wherefore, Defendants knew or should have known their statements were false because:

    (a)   Defendants were parties to the cases where the Supreme Court ruled, and,

    (b)   Defendants are required to comply with the Supreme Court's

rulings because the Supreme Court's rules are controlling; and

(c)  Defendant 2 sets the standard for rules on what is considered insurance, retirement programs and trust funds.

(d)  Wherefore, Defendants knew or should have known said advertising was spuriously designed to falsely advertise and entice;

(e)  Yet with full knowledge of these facts and Supreme Court rulings, the Defendants continue with the same marketing, knowing it falsely advertises their Social Security program spuriously inducing parties to participate with the same.

(3)  Defendants promised the SSN would not be used as a universal identifier (see Privacy Act), which promise demonstrates the legislative intent of the SSAct could not have been to number the people unless their legislative intent was to misrepresent their true intent; wherefore, Defendants knew or should have known that using the SSN to number people makes their representations to the contrary false;

(a)  Because of widespread fears of the possibility of the SSN becoming a national identifier, Defendants stated:

*"We recommend against the adoption of any nationwide, standard, personal indentification format, with or without the SSN, that would enhance the likelihood of arbitrary or uncontrolled linkage of records about people, particularly between government or government-supported automated personal data systems."* Records, Computers and the Rights of Citizens, Report of the Secretary's Advisory Committee on Automated Personal Data Systems, U.S. Department of Health, Education and Welfare, Washington: U.S. Government Printing Office, 1973, p. 121

(b)  Defendants made said Committee's recommendation law and promised the people a SSN would not number them and would not be mandatory:

*"It shall be unlawful for any Federal, State or local government agency to deny to any individual any right, benefit, or privilege provided by law because of such individual's refusal to disclose his social security account number."* (Privacy Act)

       (c)   In accord with Defendants' marketing of the program,

speaking to the U.S. House of Representatives Judiciary Committee,

Stephen Moore, of the Cato Institute, stated:

*"The Social Security card was never meant to be used for identification purposes. When the system was created in 1935, to assuage the concerns of American citizens,* **Congress insisted that the card would never and should never be used for purposes of identification.** *Its sole purpose was to ensure that workers were paying the required payroll tax. Individual workers were assigned numbers so that the proper governing authority could easily account for the contributions made to the Social Security fund."* (bold emphasis added) (From the May 13, 1997 testimony regarding, "A National Identification System")

       However, Defendant 2's current position demonstrates that insistence

was knowingly made to mislead parties to in order to number them.

   b)   Defendants offer of the Social Security program dealing with the

distribution and holding of their SSCs fits the textbook definition for trusts;

therefore, Defendants recent claim that Plaintiff 2 does not exist and that Plaintiff

2's SSN actually numbers and identifies Plaintiff 1; proves Defendants knowingly

misrepresented their intentions to get Plaintiff 1 to accept a relationship with

Plaintiff 2 when in fact they intended to give Plaintiff 1 a name and number in

their system contrary to God's Law; which relationship Plaintiff 1 would never

knowingly accept.  Wherefore, Defendants knew or should have known their

statements were false; and,

   c)   Therefore, when the apparent facts of the relationships formed between

people and Defendants using the SSC along with Defendants' marketing of the

Social Security program is totally contrary to the nature of the Social Security

program as recently revealed by Defendants, the Defendants must have known

their misrepresentations were false;

3)    Defendants intended their misrepresentations would induce Plaintiffs to rely and act on upon the same, which is shown as follows:

a)    As described more fully above in Section 2d and 2g of Argument entitled, "Defendants' spuriously market the Social Security program with false publications and advertisements in order to induce participation in said program.", Defendants spent a lot of time and money to convince the people:

(1)    The Social Security program was mandatory.

(2)    The Social Security program was an insurance program funded by a separate fund in the United States Treasury,

(3)    The Social Security program was a retirement program funded by a separate fund in the United States Treasury,

(4)    Defendants did not reveal their true intentions and, in fact, promised they wouldn't number the people with the SSN;

b)    As described more fully above in Section 2e of Argument entitled, *"Defendants' spuriously market the Social Security program with false publications and advertisements in order to induce participation in said program."*, Defendants spent a lot of time and money to convince the employers that participation in said Social Security program is mandatory; and,

c)    The most attractive (inducing) part of the relationship offered by Defendants is the fact that said relationship fits the text book definition of a trust; thus, they create a separate entity through which Plaintiff 1 can fulfill God's admonition 'to be in the world, but not of it'; which relationship allows those

involved to meet their expenses as they go through life yet not be effected by Defendant 2's bankruptcy. Accordingly, Defendants knew or should have known the nature of the relationship they offered in every way exemplified their creation of a separate trust (like Plaintiff 2); therefore their failure to disclose that the relationship they offered did not create such a trust demonstrates their intent to induce Plaintiff 1 to act upon their undisclosed offer; which thing Plaintiff 1 would never have done had the truth been disclosed; which truth Defendants now claim is: the relationship gave Plaintiff 1 a new name and an identification number.

d)    Defendants' marketing was the only disclosure Plaintiff 1 had to evaluate whether or not to participate in said program, whereas, nothing in said offer appeared to violate law or Plaintiff 1's Covenants with God, Plaintiff 1 was induced to enter into said relationship; whereas, Defendants must have known the people would not allow themselves to be identified by a number (which thing violates God's Law) their failure to disclose that intention demonstrates their intent to mislead the people not only by their silence but also by their promise that the number would never be used that way.

e)    Defendants used every means at their disposal to coerce and cajole participation in the Social Security program – even if it meant lying, violating the law and coercing others to violate the law, for example:

(1)    Defendants violated the law when Defendants lied by claiming said program was a retirement/insurance program similar to an annuity which was funded by a trust fund and benefits were a right, all of which is

false;

(2)   Defendants violated the law by promising the SSN would not be number people and then, once the people accepted Defendants' offer, claiming the number actually numbered the people;

(3)   Defendants coerced employers to get SSNs for employees who did not apply for SSNs voluntarily by ordering employers to apply for SSNs for those employees: *"If an employee fails to file an application for an account number, you are required to file one for him" (*see "Outline of ER Duties") even though there is no law that requires participation; and,

f)   Defendants marketing was so successful that it is a common belief in the country that participation is mandatory and benefits are guaranteed;

g)   Wherefore, for all the reasons stated above, Defendants must have intended Plaintiffs to rely on Defendants' misrepresentations and so act upon the same.

4)   Plaintiffs were injured because Plaintiff 1 acted in justifiable reliance on Defendants' misrepresentation, which is shown as follows:

a)   Plaintiffs relied on Defendants' misrepresentation and accordingly accepted the SSC; which Defendants now say was Plaintiff 1's acceptance of being numbered by Defendants, which injures Plaintiff 1 by violating Plaintiff 1's God-given inherent constitutionally secured right to free exercise of religion by numbering Plaintiff 1 against Plaintiff's will, which numbering Plaintiff 1 never agreed to and does not accept; still, Defendants continue to injure Plaintiff by proceeding as if their undisclosed version of the relationship numbered Plaintiff 1

and is compelling upon him:

    (1)   According to Catholic teaching, a man commits a mortal sin, which kills God's life within him, when he:

        (a)   Sins against God;

        (b)   In a serious matter;

        (c)   With consent;

        (d)   Wherefore, Plaintiff 1 must raise this case to resolve that injury or come under God's condemnation.

    (2)   Violating God's law against accepting a number is a sin against God in a serious matter (2 Samuel 24:10) that would ripple throughout Plaintiff 1's entire life, which Plaintiff 1 would never knowingly consent to; however, Defendants' forcing the same upon Plaintiff 1 directly injures Plaintiff 1.

    b)   Whereas, God's law forbids Plaintiff 1 from accepting a number, Plaintiff 1 was clearly injured by Defendants' numbering of Plaintiff 1, which numbering deprived Plaintiff 1 of his God-given inherent Constitutionally secured right to free exercise of religion;

    c)   Wherefore, Plaintiff 1 was clearly injured by Defendants' numbering Plaintiff 1, which numbering and the ties and binds that go with said numbering, deprive Plaintiff 1 of his God-given inherent Constitutionally secured right to free exercise of religion, right to liberty and right to privacy, these injuries are too extensive to completely list here; however, we detail a few here as follows:

    (1)   Plaintiff 1 was clearly injured because all of Plaintiff 1's time,

talent and effort has been perverted as if it was devoted to Defendants (mammon) without Plaintiff 1's agreement rather than to serving God, which is Plaintiff 1's mission in life;

(2)    Said numbering of Plaintiff 1, along with all the new requirements to use either the SSN or government issued I.D. which require a SSN to issue, Plaintiff 1 was fraudulently induced into a relationship tantamount to involuntary servitude, which fraudulent inducement clearly damages Plaintiff 1 and violates Amendment XIII to the U.S. Constitution;

(3)    Though Plaintiff 2 was in fact created by agreement between Plaintiffs and Defendants when Plaintiff 1 agreed to lend Plaintiff 2 consciousness and physical capacity such that Plaintiff 2 could function and hold said SSC; etc., which SSC Defendant 2 reserved as the Defendants' property; Defendants now hold Plaintiff 2 ceases to exist after many years of lawful operation, which clearly injures Plaintiff 2;

d)    Wherefore, for all the reasons stated above, Plaintiffs were clearly injured by Defendants numbering Plaintiff 1;

c.    Wherefore, according to paragraphs "VI.1.a." and "VI.1.b." above Plaintiffs have established all of the elements of fraud in the inducement proving Defendants fraudulently induced Plaintiffs to enter into said relationship:

d.    Wherefore, Plaintiffs have proven Defendants violated the law by fraudulently inducing Plaintiffs to enter into a relationship with Defendant 1 absent a lawful agreement due to Defendants' failure to disclose Defendants' true intent for said relationship.

e.    Wherefore, this court should grant the relief requested and rule Defendants

fraudulently induced Plaintiffs into said relationship with Defendants by fraudulent intent;

wherefore, said relationship is void from its beginning.

**2.    Defendant 2 argues that instead of creating and numbering Plaintiff 2, Defendant 1 numbered Plaintiff 1, which numbering was done without disclosure, and, therefore, without consent; and, accordingly Defendant 1 exceeded their statutory authority in so numbering Plaintiff 1, which abuse of power renders said agreement void from its beginning.**

a.    As detailed in the material facts section, in an unrelated tax court case, Defendant

2 argued Defendant 1 did not create Plaintiff 2, but instead numbered Plaintiff 1, thereby

disclosing Defendants' true intent in forming its relationship with Plaintiff 1, which intent

was Defendants named and numbered Plaintiff 1 instead of creating, naming and numbering

Plaintiff 2;

b.    However, basic to understanding the Constitution of the United States of America

is the principle that the people created the government with only limited powers; and, as a

matter of fact and law, the people can give to government only such powers as they,

themselves, have in the first place.  Therefore, it should be obvious, the people cannot

individually or collectively give to government that which they do not possess.

c.    Whereas, the Constitution specifically enumerates the powers granted to the

Defendants and its amendments specifically limit those powers at least as follows:

*"The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."* Amendment IX

*"The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."* Amendment X

d.    And, though the people granted government the constitutional authority to count

the people in a census they did not possess the authority to grant government authority to

assign individual people identifying numbers; nor, did the people possess the authority to grant government authority to either name the people or take dominion over them; and,

    e.    Whereas, no man has the authority to name or number any other man, no man possesses the authority to give government such an authority in law.

    f.    God forbade the numbering of His children, which Plaintiff 1 is. (Genesis 13:16, 2 Samuel 24:10);

    g.    Defendants recognize God's Word as foundational law (Public Law 97-280)

    h.    Wherefore, numbering people without their individual voluntary agreement (via contract) is not a power possessed by the people (either individually or collectively) to compel upon others or accordingly grantable by the people to Defendants; and,

    i.    Whereas, it is impossible to knowingly and willingly enter into a contract without full disclosure of the intent of both parties; and,

    j.    Whereas, all disclosure and actions of Defendant 1 indicate that Defendant 1 intended to create a trust when they sent said SSC, reserving its ownership to the Defendants and requesting that it be held until its owners wanted it back; and,

    k.    Whereas, Defendant 1 never provided Plaintiff 1 with any disclosure that indicated Defendant 1 intended to number Plaintiff 1, which would have been necessary for Plaintiff 1 to understand the true nature of the relationship;

    l.    Plaintiff 1 could not have agreed to be numbered because Plaintiff 1 did not have the necessary disclosure to understand the true nature of the relationship;

    m.    Further, whereas, God's Law forbids numbering his children for the purposes Defendant 2 states; and,

    n.    Whereas, Plaintiff 1 is bound by said Covenant to obey God's Law;

o.   Therefore, had Defendants disclosed their intent Plaintiff 1 would never have risked his immortal soul by agreeing to such numbering;

p.   Wherefore, Defendant 1's argument alleged said SSN identifies and numbers Plaintiff 1 contrary to the agreement presented to Plaintiff 1, which numbering exceeds Defendants' statutory authority and constitutes an abuse of power that renders said agreement void from its beginning;

q.   Wherefore, this court should grant the relief requested and rule the relationship Defendants' formed with said SSN is void from its beginning.

**3.   Defendant 2 argues that instead of creating and numbering Plaintiff 2, Defendant 1 numbered Plaintiff 1, which numbering was done without disclosure, and, therefore, without consent; and, accordingly violates Plaintiff 1's constitutionally secured right of freedom of religion, which violation renders said agreement void from its beginning.**

a.   Plaintiff 1 cherishes the Bible as the Word of God;

b.   The Bible states, God's people shall not be numbered and admonishes believers to be in the world and not of it;

c.   Wherefore, consenting to be numbered by Defendant 1 would more than merely violate Plaintiff 1's deeply held religious beliefs it would in fact jeopardize his immortal soul, which Plaintiff 1 would never knowingly do;

d.   The Declaration of Independence recognizes:

1)   *"...all men are...endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness..."*

2)   *"That to secure these rights, Governments are instituted among Men"*

e.   The Constitution states in its preamble that government was formed, *"...in Order to form a more perfect Union, establish Justice, insure domestic Tranquility, provide for the common defence, promote the general Welfare, and secure the Blessings of Liberty to*

*ourselves and our Posterity*" [emphasis added]

    f.   Amendment I to the Constitution states, "*Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof*"

    g.   Whereas, by Defendant 2's holding that Defendant 1 numbered Plaintiff 1, Defendants violate Plaintiff 1's God given inherent constitutionally secured right to free exercise of his religion because:

    1)   God's Law forbids numbering his children for the purposes Defendant 2 states; and,

    2)   Whereas, Plaintiff 1 is bound by said Covenant to obey God's Law;

    3)   Therefore, any such numbering by Defendants violates God's Law and puts Plaintiff 1's immortal soul at risk, which numbering Plaintiff 1 has never and would never agree to; and,

    h.   Whereas, the Supreme Court has ruled:

"*Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them*"; Miranda v. Arizona, 384 US 436 p. 491; and,

"*All laws which are repugnant to the Constitution are null and void.*" Marbury v. Madison, 5 US (2 Cranch) 137, 174, 176, (1803); and,

"*An unconstitutional act is not law; it confers no right; it imposes no duties; affords no protection; it creates no office; it is in legal contemplation, as inoperative as though it had never been passed.*" Norton v. Shelby County, 118 US 425 p.442

    i.   Wherefore, the position Defendant 1 holds by their argument states said SSN identifies Plaintiff 1 contrary to Plaintiffs' agreement, which position violates Plaintiff 1's constitutionally secured God given inherent right to freedom of religion, which violation renders said agreement void from its beginning;

    j.   Wherefore, this court should grant the relief requested and rule the relationship Defendant's formed with said SSN but absent Plaintiff 1's knowing and willing consent is

void from its beginning.

**4.    Defendant 2 argues that instead of creating and numbering Plaintiff 2, Defendant 1 numbered Plaintiff 1, which numbering was done without disclosure, and, therefore, without consent; and, accordingly violates Plaintiff 1's constitutionally secured right of Liberty, which violation renders said agreement void from its beginning.**

a.    In this land, the people are sovereign:

*"Sovereignty itself is, of course, not subject to law, for it is the author and source of law; but in our system, while sovereign powers are delegated to the agencies of government, sovereignty itself remains with the people, by whom and for whom all government exists and acts. And the law is the definition and limitation of power."* Yick Wo v. Hopkins, 118 U.S. 356 (1886);

b.    Whereas, the whole reason free-born sovereign people delegated specific powers to government was to "secure the Blessings of Liberty"; and,

c.    Whereas, the power to number another person is a sign of dominion over that other person and no man possesses such a power over other men;

d.    Therefore, the power to number a Citizen cannot be delegated to Defendants from any man or group of men; and,

e.    Whereas, allowing Defendants to number Plaintiff 1 would have given Defendants power over Plaintiff 1 which power the people did not have to give government; wherefore the government was not granted that power in the Constitution (nor could it have been); and,

f.    Whereas, the position Defendant 1 holds by their argument implies Defendants seized said power over Plaintiff 1 by holding that Defendant 1 numbered Plaintiff 1; and,

g.    Whereas, said power over Plaintiff 1 reverberates throughout Plaintiff 1's entire life and all Plaintiff 1's relations and greatly limits Plaintiff 1's Liberty in ways too numerous to list completely herein; still, we provide here a few examples as follows:

1)    Deprivation of the right to buy, sell or trade without the SSN;

2)     Deprivation of the right to exchange Plaintiff 1's labor for value without the SSN;

3)     Deprivation of the right of Plaintiff 1 to operate in his free sovereign capacity unencumbered by the numerous bonds and obligations that go with the SSN;

4)     Deprivation of the right to bank without a SSN; which deprivation is exaggerated by Defendant 2's requirement that banks and financial institutions file Suspicious Activity Reports when people even attempt to bank without a SSN;

5)     Deprivation of the right to travel without a SSN:

a)     Airlines require government issued identification; governments require an SSN to issue said identifications;

b)     State requirements that business entities (SSA created trusts) get driver's licenses would become an unlawful requirement that Plaintiff 1 become licensed thereby turning Plaintiff's right of Liberty (which is the right to take one's private property and come and go as you please without interference from government) into a privilege given or taken away at the whim of the State;

h.     Wherefore, said power deprives Plaintiff 1 of Plaintiff 1's constitutionally secured right to Liberty; and,

i.     Whereas, laws that violate constitutionally secured rights are not law:

*"Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them"*; Miranda Miranda v. Arizona, *supra.*; and,

*"All laws which are repugnant to the Constitution are null and void."* Marbury v. Madison, *supra.*; and,

*"An unconstitutional act is not law; it confers no right; it imposes no duties; affords no protection; it creates no office; it is in legal contemplation, as inoperative as though it had never been passed."* Norton v. Shelby County, *supra.*;

j.     Wherefore, Defendant 1's position that said SSN identifies Plaintiff 1 violates

Plaintiff 1's constitutionally secured God given inherent right to liberty, which violation

renders said agreement void from its beginning;

    k.    Wherefore, this court should grant the relief requested and rule the relationship

Defendant's formed with said SSN was made without Plaintiffs' consent and is void from its

beginning.

**5.    Defendant 2 argues that instead of creating and numbering Plaintiff 2, Defendant 1 numbered Plaintiff 1, which numbering was done without disclosure, and, therefore, without consent; and, accordingly violates Plaintiff 1's constitutionally secured right of privacy, which violation renders said agreement void from its beginning.**

    a.    In Section 2a of the Privacy Act, Congress recognized:

    1)    *"The right to privacy is a personal and fundamental right protected by the Constitution of the United States"*; and,

    2)    *"the increasing use of computers and sophisticated information technology, while essential to the efficient operations of the Government, has greatly magnified the harm to individual privacy that can occur from any collection, maintenance, use, or dissemination of personal information"*; and,

    3)    *"the privacy of an individual is directly affected by the collection, maintenance, use, and dissemination of personal information by Federal agencies"*; and,

    4)    *"the opportunities for an individual to secure employment, insurance, and credit, and his right to due process, and other legal protections are endangered by the misuse of certain information systems"*;

    b.    Whereas, the purpose of the Privacy Act was to

*"provide certain safeguards for an individual against an invasion of personal privacy..."*

    c.    Whereas, to protect the right to privacy secured by the Constitution, the Privacy Act stated:

*"It shall be unlawful for any Federal, State or local government agency to deny to any individual any right, benefit, or privilege provided by law because of such individual's refusal to disclose his social security account number."*

    d.    The Homeland Security Act and "Deadbeat-Dad" laws mandate the use of the SSN

even in private transactions like banking, insurance, etc. ...; and,

    e.    The anti-money laundering requirements of the P.A.T.R.I.O.T. Act and Homeland

Security Act require financial institutions to report any attempts to complete financial

transactions without an SSN on Suspicious Activity Reports; and,

f.    Whereas, the Homeland Security Act and "Deadbeat-Dad" laws requirements mandating the use of the SSN serve as a de facto universal identifier, which was exactly what the Privacy Act was passed into law to prevent; and,

g.    Whereas, the Homeland Security Act and "Deadbeat-Dad" laws requirements mandating the use of the SSN in virtually every business transaction brought into existence the crime of identify theft, which crime seriously deprives its victims of privacy; and,

h.    Whereas, Defendants are now intercepting Citizen's phone calls and emails without warrants; and,

i.    Whereas, Defendants are now gathering transaction data about Citizens; and,

j.    Whereas, Defendants are collecting all data about law abiding Citizens who aren't suspected of a crime and placing said data in a massive database to analyze every aspect of Citizen's lives;

k.    Wherefore, Plaintiffs' right to Privacy is clearly deprived by Defendants; and,

l.    Whereas, Defendant 2's ruling states said SSN identifies Plaintiff 1,which identification violates Plaintiff 1's constitutionally secured right to privacy, which violation renders said agreement void from its beginning;

m.    Wherefore, this court should grant the relief requested and rule the relationship Defendants formed with said SSN was made without Plaintiffs' consent is void from its beginning.

## 6.    Defendant 2, Plaintiff 2's Beneficiary, denied Plaintiff 2's existence and attacked Plaintiff 2's Trustee.

a.    Defendants marketed the relationship Defendant 1 would create for Defendant 2.

b.    Agents responded to that marketing and applied for such a relationship with Defendants, naming Plaintiff 1 as the applicant.

    c.    From all appearances, Defendant 1 created Plaintiff 2 with its name and SSN [distinguishing it from any other person of the same, or similar, name] by asking Plaintiffs to hold Defendants' SSC (until Defendants wanted it returned) after reserving the ownership of said SSC to Defendants and warning Plaintiffs that said SSC with its name and number could not be used unlawfully.

    d.    As detailed above, Plaintiff 1 agreed to accept the responsibility of lending consciousness and physical capacity to Plaintiff 2 through its Trustee office.

    e.    In an unrelated court case, Defendant 2 argued Plaintiff 2 was not the party identified by the SSN and alleged Plaintiff 1 was the party so identified;

    f.    Which argument denies Plaintiff 2's existence and obligations; and

    g.    Which argument is contrary to the terms and conditions of said agreement;

    h.    Which argument also accordingly threatens Plaintiff 1 at least by forcing said SSC, with its name and number, to be used outside of the parameters of its lawful use and outside of the agreements that caused it to be activated;

    i.    Wherefore, Defendant 1's ruling denied Plaintiff 2's very existence and attacks Plaintiff 2's Trustee, which attack violates the law;

    j.    Wherefore, this court should grant the relief requested and rule the relationship Defendant's formed with said SSN was made without Plaintiffs' consent is void from its beginning.

## VII    Request for Relief

Wherefore Plaintiffs respectfully request the following relief from this Court:

    a.    Make the determination that Defendants committed fraud in inducing Plaintiffs into said Social Security agreement;

b.   Recognize said Social Security agreement is null and void from its beginning;

c.   Set the parties back to status quo ante;

d.   Order Defendants to assist Plaintiff 1 in any way necessary to secure Plaintiff 1's natural status and rights;

e.   Order Defendants to assist Plaintiff 1 in resolving any issues that arise with third parties and governmental agencies regarding Plaintiff's relationship to them;

f.   Retain jurisdiction to entertain motions to ensure compliance with this court's orders.

## VIII   Closing Statement

Plaintiffs have demonstrated Defendants violated the law when they fraudulently induced Plaintiffs into a relationship that deprived Plaintiff 1 of his constitutionally secured God given inherent right to freedom of religion, right to liberty and right to privacy, which are rights most precious to any free man.  Indeed, as was shown above, the protection of these rights is the very reason the Constitution, and the government, of this great nation were formed.  Even worse than merely violating Plaintiff 1's dearly held constitutionally secured God-given inherent rights, Defendants' lies and deception have enabled them to institute a tyrannical presence where a man cannot operate in accord with God's laws, thus proving our Heavenly Father was wise in imposing the prohibition on numbering His children and against their accepting such numbers.

Wherefore, Plaintiffs petition this court to honor this Complaint and remedy the terrible wrongs committed by Defendants as disclosed herein, by granting the above listed requests for relief, issuing the above listed orders and granting whatever other reasonable relief as the court may see fit to provide.

Respectfully Presented on April 30, 2008, by Plaintiffs.

Signed: _____ , STW D   4/30/08

Plaintiff 1: Stephen Michael Van De Berg, Steward
           c/o 3947 W. Lincoln Hwy, #333
           Downingtown, Pennsylvania
           484.885.0604
           smilingdaddy@gmail.com

_____ , TTEE.   4/30/08

Plaintiff 2: STEPHEN M VAN DE BERG
           c/o 3947 W Lincoln Hwy, #333
           Downingtown, Pennsylvania 19335
           484.885.0604
           stephenmvandeberg@yahoo.com

4
08-765
PLF

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Stephen Michael Van De Berg,
STEPHEN M VAN DE BERG          88888

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF          88888
(EXCEPT IN U.S. PLAINTIFF CASES)

c/o

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
No Attorney.  Plaintiff 1's contact information is as follows:
3947 W. Lincoln Hwy, #333
Downingtown, Pennsylvania
PH: 484.885.0604

## DEFENDANTS

Social Security Administration,
United States Government

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

Case: 1:08-cv-00765
Assigned To : Friedman, Paul L.
Assign. Date : 5/1/2008
Description: FOIA/Privacy Act

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

O  1 U.S. Government
       Plaintiff

O  2 U.S. Government
       Defendant

O  3 Federal Question
       (U.S. Government Not a Party)

O  4 Diversity
       (Indicate Citizenship of
       Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

**O A. Antitrust**

☐ 410 Antitrust

**O B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**O C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**O D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**O E. General Civil (Other)          OR          O F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

④

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☒ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Court from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C. §§ 1331, The constitution, The Privacy Act, and 5 USC 702 and 706. Plaintiffs bring this action against Defendants for fraud in the inducement.

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ [_____]    Check YES only if demanded in complaint    JURY DEMAND: ☐ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 4/30/08   5-1-08    SIGNATURE OF ATTORNEY OF RECORD   No Attorney   Plaintiff 1: [signature]  Stwd   Plaintiff 2: [signature] Title.

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**

Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT   (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.